UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| KVAERNER PHILADELPHIA SHIPYARD, INC.,<br><br>Plaintiff,<br><br>v.<br><br>PHILADELPHIA METAL TRADES COUNCIL, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  No. 02-CV-3710<br>)<br>)<br>)<br>)<br>) |

### DECLARATION OF RON AULT

I, Ron Ault, pursuant to 28 U.S.C. § 1746, depose and state as follows:

1.  I am the East Coast Representative of the Metal Trades Department of the American Federation of Labor and Congress of Industrial Organizations ("MTD" or "Department"). I have held that position since July 5, 1999.

2.  In my capacity as East Coast Representative, I assist local Metal Trades Councils in negotiating and administering collective bargaining agreements with employers. I also carry out assignments from the Department's President.

3.  The MTD is a labor organization that was chartered by the American Federation of Labor-Congress of Industrial Organizations ("AFL-CIO"). The MTD maintains its headquarters at 888 16th Street, N.W., Washington, D.C. 20006. The day-to-day operations of the MTD are handled by the Department's President and its representatives, under the overall supervision of its Executive Council.

4.  The AFL-CIO chartered the MTD to coordinate negotiations, organizing and political action among approximately twenty affiliated international unions who have members

employed in the various metal trades. These affiliated international unions include, by way of example, the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO ("UA"); the International Brotherhood of Electrical Workers, AFL-CIO ("IBEW"); the Sheet Metal Workers International Association, AFL-CIO ("SMWIA"); International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO ("IBB"); and the International Association of Heat, Frost, Insulation and Asbestos Workers, AFL-CIO ("IAHFIAW").

     5.    Most of these international unions are also affiliated with the Building and Construction Trades Department ("BCTD"), which is a separate department charted by the AFL-CIO to coordinate negotiations, organizing and political action among the members of those international unions who are employed in the building and construction trades. The BCTD and the MTD are separate and independent entities.

     6.    The MTD has a Constitution and Bylaws, which governs the operations of the Department and the Department's own affiliates. A true and accurate copy of the MTD Constitution is attached hereto as Exhibit 1.

     7.    Article VIII, Section 1 of the MTD Constitution provides for the chartering of district Metal Trades Councils, state Metal Trades Councils and local Metal Trades Councils. That section states that the MTD may issue a charter for a local Metal Trades Council upon the request of three or more local unions of the affiliated international unions.

     8.    Each local Metal Trades Council adopts its own constitution and bylaws in accordance with Article X of the MTD Constitution.

9. Article VIII, Section 6 provides that each local Metal Trades Council shall establish an executive board composed of the President and Secretary and one delegate from each affiliated local union.

10. Article VIII, Section 7 provides that the duties of local executive boards are to attend to any business assigned to them by the local council in accordance with the laws of the MTD.

11. Article XI, Section 6 of the MTD Constitution provides that no local Metal Trades Council can order a strike of the members affiliated without the consent of the MTD and the sanction of the international metal trades unions involved.

12. For the city of Philadelphia, the MTD has given a charter to the Philadelphia Metal Trades Council, AFL-CIO ("PMTC" or "Council").

13. The PMTC is a labor organization composed of approximately eleven (11) affiliated local unions whose international unions are affiliates of the MTD. The eleven affiliated local unions include, but are not limited to, local unions of the UA, IBEW, SMWIA, IBB and IAHFIAW. These local unions may be affiliated with the local building and construction trades council in Philadelphia, just as their international unions may be affiliated with the BCTD.

14. One of the eleven local unions that are affiliated with the PMTC is the Insulation and Asbestos Workers Local 14. ("Asbestos Workers Local 14" or "Local 14"). Local 14 represents no employees, and has no members, at the Kvaerner Philadelphia Shipyard.

15. Asbestos Workers Local 14 is an affiliate of the Philadelphia Building and Construction Trades Council.

16. The PMTC is an autonomous and independent entity that controls its own day-to-day operations with the guidance of the MTD Constitution and Bylaws. In turn, the eleven affiliated local unions are autonomous and independent from the PMTC, controlling their own day-to-day operations in accordance with the bylaws and constitutions of their parent international unions.

17. The PMTC has adopted its own bylaws. A true and accurate copy of the PMTC bylaws is attached hereto as Exhibit 2.

18. Article III of the PMTC bylaws provides that the purpose of the Council is to protect and promote the interests of the membership of the affiliated local unions. The PMTC accomplishes these purposes by, among other things, negotiating and administering collective bargaining agreements with employers with whom the Council is the recognized collective bargaining representative.

19. Until July 1999, the Executive Board governed the PMTC. However, effective July 1, 1999, the MTD placed the PMTC into trusteeship for reasons unrelated to the issues involved in the above-captioned matter. I am currently Trustee over the affairs of the PMTC.

20. As the Trustee of the PMTC, my duties and responsibilities include the overall management of the affairs of the Council. Pursuant to the Department's Constitution, as Trustee, I stand in the place of the Council's officers with overall authority to handle the affairs of the Council. Upon the imposition of the trusteeship, the council's officers were removed, and none of the Council's former officers, including Phillip Rowan, identified in the Complaint as Vice President of the Council has any authority to act for the Council during the trusteeship.

21. Historically, the PMTC was the exclusive bargaining representative of employees who were employed at the Philadelphia Naval Shipyard while that shipyard was still owned and operated by the United States government.

22. The Philadelphia Naval Shipyard closed in 1995.

23. In 1998, Kvaerner Philadelphia Shipyard, Inc. ("Kvaerner") began constructing and operating a shipyard on the premises of the Philadelphia Shipyard.

24. In September 1998, Kvaerner and the PMTC, with the assistance of the MTD, negotiated a collective bargaining agreement covering production and maintenance employees at the Philadelphia Shipyard. I am familiar with the collective bargaining agreement because of my role as East Coast Representative of the Department.

25. The collective bargaining agreement provides that Kvaerner recognizes the exclusive bargaining representative as the "Union," which includes the PMTC, as well as the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry; the International Association of Bridge, Structural and Ornamental Iron Workers, International Brotherhood of Boilermakers, United Brotherhood of Carpenters and Joiners; International Association of Heat, Frost, Insulation and Asbestos Workers; Sheet Metal Workers International Association; International Association of Machinists and Aerospace Workers; Laborers International Union of North America; International Union of Operating Engineers; International Union of Painters and Allied Trades. These eleven international unions are the international metal trades unions of the local unions that are affiliated with the PMTC.

26. The collective bargaining agreement contains a grievance and arbitration procedure in Article 16.

27. The collective bargaining agreement contains a provision concerning the subcontracting of work in Article 28.

28. The PMTC has previously filed a grievance concerning Kvaerner's alleged breach of the subcontracting provision in the collective bargaining agreement. That grievance was filed prior to the dispute in the above-captioned matter. The grievance is still pending and will be set for arbitration in the near future.

29. The collective bargaining agreement contains a no-strike/no-lockout provision in Article 17. Section 1 of the no-strike clause sets forth the general prohibition that there shall be, among other things, no strikes, picketing, slowdowns, sit-downs, cessation of work, boycotts, and refusals to cross picket lines.

30. Section 2 of the no-strike clause provides that the Union, its officers, agents, representatives and members shall not in any way authorize, ratify, assist, encourage, participate in, sanction, condone, or lend support to any strikes, picketing, slowdowns, et cetera.

31. Section 2 also provides that if employees engage in unauthorized strikes, picketing, slowdowns, et cetera, then the Union shall be obligated to support the Company and endeavor, within twenty four hours after receiving written notice from Kvaerner, to undertake four actions. First, the Union is supposed to publicly disavow the employees' action. Second, the Union would be required to advise Kvaerner's Vice President of Human Resources in writing that the Union has not authorized or sanctioned the employees' actions. Third, the Union would be required to notify the employees of its disapproval of their action and instruct the employees to cease such action. Finally, the Union would be required to post a notice on all bulletin boards advising employees that it disapproves of their action and instructing the employees to return to

work. The agreement provides that if these conditions are met, the Union has no responsibility for an unauthorized work stoppage.

32.    The no-strike clause does not require the Union to take those four steps if Kvaerner fails to provide the written notice in the first instance.

33.    The PMTC and its authorized representatives did not engage in any picketing, striking or boycotting at Kvaerner's Philadelphia Shipyard. To my knowledge, none of the employees at the Shipyard who are covered by the collective bargaining agreement have engaged in picketing, striking, boycotts, work slowdowns and/or sympathy strikes.

34.    As previously noted, while the collective bargaining agreement contains a no-strike clause, section 2 of that clause contains a specific procedure that must be followed when seeking the PMTC's assistance in stopping any alleged violation of the no-strike clause. Kvaerner failed to follow that procedure in that, to my knowledge, it has not provided any written notice to the PMTC that could trigger the PMTC's obligations under the contract. It has provided no such written notice to me.

35.    While Asbestos Workers Local 14 and/or its authorized representatives may have engaged in picketing at the Philadelphia Shipyard, to my knowledge, such picketing was undertaken by Local 14 in representation of Local 14's building and construction trades members. These individuals are not employed by Kvaerner and do not work at the Philadelphia Shipyard. As I further understand, Local 14 members were engaged in "area standards picketing" to protest an out-of-town subcontractor's payment of wages that were below the wage rates in the area for insulation workers in the building and construction trades and that were, therefore, undermining area standards. Further, to my knowledge, Local 14 did not engage in the picketing because of any dispute arising under the Kvaerner agreement, including any dispute

7

concerning a breach of the subcontracting clause contained within the collective bargaining agreement between PMTC and Kvaerner.

36. I am attaching a recent article from the *Philadelphia Inquirer* that underscores my understanding that the picketing is in furtherance of goals of entities other than the PMTC and that does not relate to a dispute arbitrable under the collective bargaining agreement. A true and accurate copy of that article, which is entitled "Kvaerner Owner's 2 Challenges" from the June 10, 2002 edition of the *Philadelphia Inquirer* is attached hereto as Exhibit 3. As this article demonstrates, building trades unions, such as Asbestos Workers Local 14, have disputes with Kvaerner over issues other than alleged breaches of the subcontracting provision in the collective bargaining agreement.

37. As Asbestos Workers Local 14 has no employees working at the Philadelphia shipyard and as it was Local 14's building and construction trades members who were engaging in the area standards picketing, the PMTC has no power or control over Local 14. The PMTC bylaws do not contain any provisions that could be used to discipline or otherwise prevent Local 14 from engaging in areas standards picketing using building and construction trades members over a dispute not arising under the Kvaerner agreement.

38. While Article XVII of the PMTC's bylaws provides for charges and penalties, such charges are limited to those filed against any person representing the PMTC in any official capacity for willful failure to perform duties under the bylaws or a collective bargaining agreement; for malfeasance in office or misappropriation of PMTC funds or assets; and/or false or slanderous statements by or against Council officers, delegates or an affiliated local union. Given Asbestos Workers Local 14 members were not representing the PMTC in any capacity when they engaged in their picketing, and given malfeasance and slander are not at issue, there is

no basis upon which the PMTC could take action against Local 14 for its area standards picketing.

39.   On or around June 12, 2002, a letter was sent by the MTD to the Council and all of the defendants informing them of the Court's issuance of a temporary restraining order in the above captioned matter. A true and accurate copy of that letter is attached hereto as Exhibit 4. In that letter, the MTD and PMTC expressly disavowed and disapproved of any picketing or refusal to report to work and notified all employees that they should return to work. Also, in that letter, the MTD and PMTC stated they were notifying all concerned that they disavow and disapprove of the actions undertaken by Asbestos Workers Local 14. Both the MTD and PMTC stated that employees should continue to work.

I declare under the penalty of perjury that the foregoing is true and correct.

_____
Ron Ault

DATED: 18 June 2002

93642_3